## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CR-20058 |
| | ) | |
| HENRY L. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S
### COMMENTARY ON SENTENCING FACTORS

NOW COMES the United States of America, by James A. Lewis, United States

Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United

States Attorney, and hereby files its Commentary on Sentencing Factors in advance of

the sentencing hearing scheduled for November 14, 2016. Because the criminal history

contained in the Presentence Report (PSR) establishes that the defendant is an Armed

Career Criminal (ACC), the United States informs the Court that it is exercising its

option under the plea agreement to declare it null and void, which would permit the

defendant to withdraw from the previously accepted guilty plea, if he so chooses.

### FACTUAL AND PROCEDURAL HISTORY

**I.     Criminal History**

The defendant, Henry Johnson, now 39, has a long criminal history. He was first

adjudicated delinquent in Cook County, Illinois at the age of 10 for criminal damage to

property and robbery (PSR ¶25), and was sent to the Illinois Department of Corrections

(IDOC) juvenile division at the age of 14 for possession of a stolen automobile following repeated violations of his juvenile probation. (PSR ¶26) He was paroled, revoked, and paroled again. (PSR ¶26)

At the age of 17, while still on juvenile parole, he stole a car at gunpoint, was convicted as an adult of armed robbery, and was sentenced to six years in IDOC. (PSR ¶27) While on felony parole for that offense, he sold cocaine at the age of 21 and also committed aggravated battery of a police officer at the age of 22 by striking one officer and biting another officer. (PSR ¶¶ 28-29) He was sentenced to three years in IDOC on the drug trafficking charge and four years in IDOC on the aggravated battery charges. (PSR ¶¶ 28-29) He was released on parole, but his parole was revoked. (PSR ¶¶28-29)

Soon thereafter, between the ages of 27 and 29, the defendant twice resisted a peace officer (PSR ¶¶ 30 & 32) and committed aggravated fleeing, for which he was sentenced to two more years in IDOC. (PSR ¶31) At the age of 30, while on parole for that offense, the defendant drove while intoxicated, and arresting officers had to use a Taser to subdue him. (PSR ¶33) He returned to IDOC once again for violating his parole. (PSR ¶31-33)

At 31, the defendant committed additional firearms-related offenses and was initially charged with attempted first degree murder for shooting an individual "about the body" with a firearm. He ultimately pled guilty to being an armed habitual criminal (PSR ¶34) and aggravated battery with a firearm (PSR ¶35), and sentenced to six years in IDOC for each charge. (PSR ¶¶34-35). After being paroled for these offenses, his

parole was revoked on three separate occasions in 2014 and 2015, respectively. He was last paroled on May 15, 2015. (PSR ¶35)

On September 12, 2015, while the defendant was on parole for the aggravated battery with a firearm conviction, he committed the instant federal offense by possessing a semi-automatic pistol loaded with hollow point rounds at a public housing complex in Danville and then running from the police after they approached him. (PSR ¶¶ 4-10)

## II.     The Criminal Proceedings

On November 3, 2015,[1] a federal grand jury indicted the defendant for possession of a firearm by a felon. (R.1) The defendant filed a motion to suppress evidence (R.9), which this Court denied. (R.13) On April 28, 2016, the defendant pleaded guilty pursuant to a written plea agreement with the United States. (R.15) That same date, United States Magistrate Judge Long conducted the Rule 11 colloquy. This Court later accepted the plea of guilty. (R.20)

The parties entered into the plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. At the time of the plea agreement, the parties understood that the defendant was not an Armed Career Criminal (ACC) pursuant to Title 18, United States Code, Section 924(e). (Plea ¶16(c)) Nonetheless, the plea explicitly permitted either party to withdraw from the plea agreement if the United States discovered that the defendant qualifies as an ACC:

---

[1] Paragraph 1 of the PSR contains a typographical error stating the indictment was returned on "November 3, 2016."

> The parties understand that the defendant has a criminal history category of VI and is not an Armed Career Criminal. Defendant acknowledges and understands that, if prior to sentencing, the United States discovers that the defendant is classified as an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e), either party has the option to declare the plea agreement null and void. In the event either party exercises its option to declare the plea agreement null and void, the United States will be completely released from all of its obligations under this plea agreement, and the defendant will be allowed to withdraw from any previously accepted guilty plea[.]

(Plea ¶16(c))

On July 26, 2016, the probation office prepared its first PSR, which was filed on August 2, 2016. (R.23) According to the initial PSR, the defendant qualified as an ACC based on his three prior convictions for armed robbery, aggravated battery of a peace officer, and aggravated battery with a firearm, respectively. (Initial PSR ¶21) On August 15, 2016, the United States wrote a letter to the probation office and the defendant indicating its intention to exercise its option to declare the plea agreement null and void:

> The United States agrees with the determination in paragraph 21 of the PSR that the defendant is an armed career criminal subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e). Therefore, pursuant to paragraph 16(c) of the plea agreement in this case, the United States intends to exercise its option to declare the plea agreement null and void, which will completely release the United States from all of its obligations under the plea agreement and allow the defendant to withdraw from any previously accepted guilty plea.

(Letter dated August 15, 2016, from AUSA Eugene Miller to U.S. Probation Officer Alexander Morris)

On Friday, September 2, 2016, the probation office filed its revised PSR. (R.24) In the revised PSR, the probation office reversed course as to the defendant's ACC status,

4

determining that "[t]he defendant's conviction for Aggravated Battery of a Peace Officer, Cook County Case No. 99-CR-1559401 does not qualify as a crime of violence under _Mathis v. United States_, 579 U.S. ___ (2016)." (Revised PSR ¶21) The PSR misapplies _Mathis_ to the defendant's aggravated battery of a peace officer conviction. Therefore, the United States objects to the PSR's conclusion that the defendant is not an ACC. To the contrary, it asserts that the defendant is an ACC and informs the Court that it is exercising its option under the plea agreement to declare it null and void, which permits the defendant to choose whether to withdraw his previously accepted guilty plea.

## ARGUMENT

While the defendant has numerous prior convictions, the initial PSR concluded that three of those convictions qualified the defendant as an ACC pursuant to 18 U.S.C. § 924(e): armed robbery, aggravated battery of a peace officer, and aggravated battery with a firearm. To quote Seventh Circuit Judge David Hamilton, the proposition that these three crimes qualify as violent felonies "might seem about as interesting as a prediction that the sun will rise in the east tomorrow. Nevertheless, the intricate law that has developed around the classification of prior convictions for recidivist sentencing enhancements can produce some surprising results." _United States v. Duncan_, No. 15-3485, 2016 WL 4254936, at *1 (7th Cir. Aug. 12, 2016) (finding Indiana's robbery statute was a violent felony under the use of force clause of the ACCA). In fact, the revised PSR now concludes that the defendant's conviction for aggravated battery of a

peace officer does not qualify as a violent felony after *Mathis*. The United States

disagrees.

I.      **The Defendant's Illinois Aggravated Battery of a Peace Officer Conviction Qualifies as a Violent Felony under the Armed Career Criminal Act.**

Under controlling Seventh Circuit precedent, Illinois' aggravated battery statute

is a divisible statute, and any individual convicted of causing bodily harm under the

statute has committed a violent felony for purposes of the ACCA. The PSR fails to apply

this binding precedent based on its conclusion that this precedent has been implicitly

overruled by *Mathis*. This is incorrect. Moreover, only the Supreme Court or the

Seventh Circuit may determine that its precedent has been implicitly overruled.

A.      **Aggravated battery of a peace officer under Illinois law is a divisible statute subject to the modified categorical approach.**

Under Illinois law, a person commits battery "if he intentionally or knowingly

without legal justification and by any means, (1) causes bodily harm to an individual or

(2) makes physical contact of an insulting or provoking nature with an individual." 720

ILCS 5/12–3. Moreover, under relevant Illinois law, a defendant commits aggravated

battery if, in committing a battery, "he knows the individual harmed to be a peace

officer." 720 ILCS 5/12–4(b)(6).

Unequivocally, an individual who commits an aggravated battery by causing

bodily harm to an individual has committed an offense that meets the ACCA's

definition of a violent felony. Under the ACCA, any felony that "has as an element the

use, attempted use, or threatened use of physical force against the person or another" is

a violent felony. 18 U.S.C. § 924(e)(2)(B)(i); *see also Johnson v. United Sta*tes, 559 U.S. 133,

140 (2010) (interpreting "physical force" in the context of a violent felony to mean "force capable of causing physical pain or injury to another person").

Thus, the Seventh Circuit has repeatedly found that an Illinois aggravated battery conviction based on causing bodily harm—the first prong of the battery statute—involves physical force and qualifies as a violent felony under the ACCA. *See, e.g., Stanley v. United States*, 827 F.3d 562, 563 (7th Cir. 2016) ("the Illinois offense of aggravated battery of a peace officer is a violent felony because the use of force is an element of the offense"); *Hill v. Werlinger*, 695 F.3d 644, 649–50 (7th Cir. 2012) (holding that an aggravated battery conviction under the first prong of the Illinois battery statute—"causes bodily harm to an individual"—has as an element "the use, attempted, use, or threatened use of physical force" such that the conviction qualifies as a violent felony under the Armed Career Criminal Act); *see also Rogers v. United States*, No. 15-CV-02172, 2016 WL 1328093, at *5 (C.D. Ill. Apr. 5, 2016).

On the other hand, a conviction for merely making contact of an insulting and provoking nature with another person – the second prong of the Illinois battery statute – is not a violent felony because it could be committed in a way that does not involve the use, attempted use, or threatened use of physical force against another person. *See, e.g., United States v. Evans*, 576 F.3d 766, 769 (7th Cir. 2009) (finding aggravated battery conviction for insulting or provoking contact with a pregnant woman not a violent felony because it could include an unwanted kiss, even though defendant actually grabbed victim by the face and pushed her to the floor).

In 2010, the Supreme Court addressed Florida's similarly drafted felony battery statute and suggested that it was a divisible statute where the modified categorical approach should be applied to determine if it met the ACCA's definition of violent felony:

> The dissent likewise anticipates that in the States it has identified as having generic felony-battery statutes that cover both violent force and unwanted physical contact, our decision will render convictions under those statutes "outside the scope of [the Armed Career Criminal Act]."
>
> This exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "modified categorical approach" that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. Indeed, the Government has in the past obtained convictions under the Armed Career Criminal Act in precisely this manner.

*Johnson*, 559 U.S. at 144 (citations omitted).

More to the point, after the Supreme Court's decision in *Johnson,* the Seventh Circuit specifically held that the Illinois crime of aggravated battery is a divisible statute subject to the modified categorical approach. *United States v. Rodriguez–Gomez*, 608 F.3d 969, 973 (7th Cir. 2010). In that case, the charging document established that the defendant was "convicted under the first prong of the battery statute, and that the first prong of the statute requires 'the use, attempted use, or threatened use of physical force.'" *Id.* at 973-74. *Rodriguez-Gomez* remains the law of the Seventh Circuit. *See, e.g.,*

*Stanley,* 827 F.3d at 563 ("We held in *United States v. Rodriguez–Gomez,* 608 F.3d 969, 973 (7th Cir. 2010), that aggravated battery in Illinois is a divisible statute.")[2]

Therefore, the Illinois aggravated battery statute is a divisible statute permitting application of the modified categorical approach. If, in applying that approach, it is determined that the defendant was convicted under the first prong of the battery statute (*i.e.,* causing bodily harm), then the conviction qualifies as a violent felony under the ACCA.

> **B.** **The charging document unequivocally establishes that causing bodily harm was an element of the defendant's convictions for aggravated battery of a peace officer.**

On June 23, 1999, the defendant intentionally caused bodily harm to two Chicago Police Officers – one by striking him about the hand and body and the other by striking and biting him. (PSR ¶29) The defendant was indicted on two counts of aggravated battery of a peace officer in Cook County, Illinois Case No. 99-CR-1559401. (PSR ¶29) More specifically, Count One charged that the defendant

> committed the offense of aggravated battery of a peace officer in that he, in committing a battery, other than by the discharge of a firearm, knowingly or intentionally caused bodily harm to [K.D.], to wit: struck [K.D.] about the hand and body, knowing [K.D.] to be a peace officer, to wit: Chicago Police, while engaged in the execution of his official duties,

---

[2] Both the defendant and the PSR fail to cite *Rodriguez-Gomez* in arguing that the Illinois aggravated battery statute is not divisible. That is not surprising, since they are asking this Court to ignore such binding precedent and to find that the Supreme Court's decision in *Mathis* implicitly overruled *Rodriguez-Gomez.* As argued extensively, *infra, Mathis* did not implicitly overrule *Rodriguez-Gomez.* Regardless, that is a decision that can only be made by the Supreme Court or the Seventh Circuit itself, not in the district court. *Cf. United States v. Reyes-Hernandez,* 624 F.3d 405, 413 (7th Cir. 2010) (noting that district courts in the Seventh Circuit repeatedly implored it to address an issue in light of recent Supreme Court cases, establishing that the district courts themselves were not free to simply ignore binding circuit precedent). Until it is overruled, *Rodriguez-Gomez* remains good law, and this Court is bound to apply it.

in violation of Chapter 720 Act 5 Section 12-4(b)(6) of the Illinois Compiled Statutes 1992, as amended . . .

(*See* Exhibit A, attached hereto)[3] Count Two charged that the defendant

committed the offense of aggravated battery of a peace officer in that he, in committing a battery, other than by the discharge of a firearm, knowingly or intentionally caused bodily harm to [T.B], to wit: struck and bit [T.B.] about the hand and body, knowing [T.B.] to be a peace officer, to wit: Chicago Police, while engaged in the execution of his official duties, in violation of Chapter 720 Act 5 Section 12-4(b)(6) of the Illinois Compiled Statutes 1992, as amended . . .

(*See* Exhibit A, attached hereto) On October 5, 1999, the defendant pleaded guilty to both counts and was sentenced to four years in IDOC. (PSR ¶29)

Here, the charging document unequivocally establishes that the defendant was charged under the "bodily harm" prong of the Illinois aggravated battery statute, not the "insulting or provoking nature" prong. Thus, under well-established Supreme Court and Seventh Circuit precedent, the defendant's aggravated battery conviction qualifies as a violent felony under the ACCA. *Johnson*, 559 U.S. at 144; *Stanley*, 827 F.3d at 563; *Hill*, 695 F.3d at 649–50; *Rodriguez–Gomez*, 608 F.3d at 973.

C.     *Mathis* **did not overrule the Seventh Circuit's prior holding that the Illinois aggravated battery statute is divisible.**

As noted, *infra*, the Court is bound to apply controlling Seventh Circuit precedent holding that the Illinois aggravated battery statute is divisible. Nonetheless, the defendant and PSR implicitly claim that the Supreme Court's recent decision in

---

[3] The Seventh Circuit has requested that state records establishing a disputed prior conviction be made part of the record. *Rodriguez-Gomez*, 608 F.3d at 974 ("We note that it would be good practice to provide the appropriate state records at the sentencing hearing and attach them to the appellate record so that the reviewing court can better ascertain whether a sentencing enhancement is warranted.")

*Mathis v. United States,* 136 S. Ct. 2243 (2016), overruled *Johnson, Stanley, Hill, Rodriguez-Gomez,* and similar cases and that committing the Illinois offense of aggravated battery by causing bodily harm is no longer a violent felony under the ACCA. In essence, the defendant and PSR argue that *Mathis* effectively abolished the modified categorical approach, because if their argument is accepted, few, if any statutes, would be divisible.[4] They misread *Mathis.* As an initial matter, *Mathis* does not cite *Johnson*, let alone purport to overrule it. Moreover, as recently as last year, the Supreme Court favorably cited *Johnson* in an unrelated case bearing the same name. *See Johnson v. United States,* 135 S. Ct. 2551, 2555 (2015).

In fact, *Mathis* did not address the ACCA's use-of-force clause at all. It was limited to addressing whether the Iowa burglary statute was broader than the ACCA's enumerated generic burglary offense.[5] The seminal cases relied on by *Mathis* – including *Taylor v. United States,* 495 U.S. 575 (1990), *Shepard v. United States,* 544 U.S. 13 (2005), and *Nijhawan v. Holder,* 557 U.S. 29 (2009) – were relied upon by *Johnson*, as well, in

---

[4] For this reason alone, the defendant's and PSR's view must be rejected as incompatible with congressional intent. *See Voisine v. United States*, 136 S. Ct. 2272, 2280–81 (2016). The Supreme Court rejected a similar interpretation of Maine's misdemeanor crime of domestic violence because it would result in no conviction obtained under that statute or the statutes of 35 other jurisdictions qualifying as violent crimes. *Id.* (noting it had previously declined to construe a statute so as to render it ineffective in ten states).

[5] In arguing in his PSR objection that "if the statute sweeps more broadly than the generic crime, a conviction under the law cannot count," the defendant is mixing apples and oranges. *Mathis, Descamps*, and *Taylor* were all addressing whether a state burglary qualified as a "generic" enumerated crime under the ACCA. In this case, the defendant's aggravated battery conviction does not qualify as an enumerated offense; it qualifies under the use-of-force prong of the ACCA, so *Mathis, Descamps*, and *Taylor* have limited application here. The question is not whether the Illinois statute is "generic" aggravated battery; it is whether the defendant was convicted of a crime that has as an element the use of force.

holding that the modified categorical approach still allows courts to determine which

statutory phrase was the basis for conviction for divisible statutes, like the Illinois

aggravated battery statute. *Mathis* applies *Johnson*; it does not overrule it.

If there were any doubt, *Mathis* described the modified categorical approach

precisely as it had in *Johnson:*

> Some statutes, however, have a more complicated (sometimes called "divisible") structure, making the comparison of elements harder. A single statute may list elements in the alternative, and thereby define multiple crimes. Suppose, for example, that the California law noted above had prohibited "the lawful entry or the unlawful entry" of a premises with intent to steal, so as to create two different offenses, one more serious than the other. If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; but, conversely, the conviction would not qualify if it were for the offense with lawful entry as an element. A sentencing court thus requires a way of figuring out which of the alternative elements listed—lawful entry or unlawful entry—was integral to the defendant's conviction (that is, which was necessarily found or admitted). To address that need, this Court approved the "modified categorical approach" for use with statutes having multiple alternative elements. Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense.

*Mathis*, 136 S. Ct. at 2249 (citations omitted).

The hypothetical divisible statute described in *Mathis* is identical to the Illinois

aggravated battery of a peace officer statute. The Illinois aggravated battery statute is

divisible because it lists multiple elements disjunctively (*i.e.,* causing bodily harm *or*

making insulting and provoking contact). Thus, under the modified categorical

approach, the Court must look to the indictment to determine what crime, with what

elements, the defendant was convicted of committing. Here, an even cursory review of the charging documents reveals that he committed the crimes of causing bodily harm to two separate officers, which are violent felonies under the ACCA's use of force clause.

1. **Under Illinois case law, the "causes bodily harm" prong is an element of the offense of battery that must be proven to a jury, not simply a means of committing the offense.**

In *Mathis,* the Supreme Court directed a sentencing court to look to "authoritative sources of state law" to determine whether listed alternatives are elements versus means. 136 S. Ct. at 2256. In fact, in *Mathis* itself, the Court relied on two Iowa Supreme Court cases ruling that the Iowa burglary statute listed alternative means of satisfying a single locational element. *Id.* The defendant has cited no authoritative state law for the proposition that the Illinois battery statute contains alternative means, rather than elements. While the probation officer relies on *People v. Hale,* 77 Ill.2d 114 (1979), that reliance is misplaced.

A reading of *Hale* reveals that it actually leads to a conclusion that the statute lists elements, as opposed to means, in the alternative, and therefore, that the modified categorical approach is appropriate. Tellingly, neither the defendant nor the probation officer identify the nature of the alleged "single element" satisfied by the listed alternative "means." *Mathis* relied on the Iowa Supreme Court's conclusion that its burglary statute contained a single locational element. Here, no such single overarching element exists; it certainly is not a "physical contact" element. *Hale,* 77 Ill.2d at 120 ("it was held that a complaint which failed to charge either that the physical contact was of an insulting or provoking nature or caused bodily harm did not allege all the material

facts constituting the offense of battery"). The inability to articulate a single element encompassing both prongs of the Illinois battery statute reveals that the "bodily harm" prong and the "insulting and provoking contact" prong are alternative elements, not alternative means. Furthermore, the PSR's notation that the Illinois jury instructions list both prongs as alternatives further establishes that they are alternative elements that must be proven to a jury beyond a reasonable doubt and not simply alternative means of committing some non-existent single element.

In fact, Illinois courts have held that "[t]he corollary to *Hale* is that the State must either elect which type of battery to charge, or to charge in the alternative if it is unsure of its evidence . . ." *People v. Veile*, 109 Ill. App. 3d 847, 850 (1982); *see also People v. Jenkins*, 190 Ill. App. 3d 115, 130 (1989) ("Generally, the State must choose which ground to charge for battery, or must charge in the alternative."); *People v. McBrien*, 144 Ill. App. 3d 489, 496, (1986) (same). In *Veile*, the state charged bodily harm, but the proof only showed insulting and provoking contact. Therefore, the Illinois court reversed the conviction, finding that the proof of bodily harm to sustain the battery was insufficient. *Id.* at 851. This directly rebuts that defendant's incorrect claim that "[a] jury could convict someone of aggravated battery under (b)(6) even if some of the jurors concluded the defendant committed battery by insulting or provoking contact or by bodily harm . . ." *See also People v. Fuller*, 159 Ill. App. 3d 441, 445 (1987) (reversing battery conviction where the officer did not testify that he was injured in any way by the defendant kicking); *McBrien*, 144 Ill. App. 3d at 496 (reversing battery conviction because bodily harm not shown and insulting and provoking element not charged).

Moreover, the Illinois Supreme Court has never held that the Illinois aggravated battery statute contains a single element that can be satisfied by two different means. Thus, the Iowa burglary statute addressed in *Mathis* is distinguishable from the Illinois aggravated battery statute. Under Illinois law, the prosecution must elect which type of battery to charge. This would not be the law if the "causing bodily harm" prong and "making contact of an insulting and provoking nature" prong were merely different means of committing a single element. Therefore, Illinois law establishes they are alternative elements listed in the disjunctive.

2.      **The Illinois statute itself supports a finding that each of the prongs are alternative elements.**

*Mathis* noted that "the statute on its face may resolve the issue." 136 S. Ct. at 2256. As an example, the Supreme Court discussed a statute requiring use of a deadly weapon as an element, but providing various means of satisfying the element. *Id.* at 2249. It then concluded that the Iowa statute similarly required only a locational element that could be satisfied by various means. *Id.* at 2250. It went on to note that if a "statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* at 2256. Here, the Illinois aggravated battery statute does not offer a statutory list of illustrative examples. Instead, it is like the divisible statutes addressed in *Johnson* and *Mathis* that permit the modified categorical approach: it contains statutory phrases that cover different generic crimes and lists multiple elements disjunctively. *Rodriguez–Gomez*, 608 F.3d at 973.

### 3. Finally, the record of the prior conviction itself establishes "causing bodily harm" is an element of the offense.

Although Illinois law establishes that "causing bodily harm" is an alternative element of the offense, *Mathis* instructs that if authoritative sources of state law fail to provide clear answers, a sentencing court may look to "the record of a prior conviction itself" to determine whether the listed items are elements of the offense. *Mathis,* 136 S. Ct. at 2256-57. "[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* at 2257.

Here, the record of the defendant's prior conviction references only the "caused bodily harm" phrase, to the exclusion of the "insulting and provoking" phrase. Therefore, under *Mathis,* this further establishes that the Illinois aggravated battery statute contains a list of elements, not alternative means.

## II. The Defendant's Illinois Armed Robbery Conviction Qualifies as a Violent Felony under the Armed Career Criminal Act.

On August 31, 1994, the defendant took a car from a woman by the use of force while he was armed with a dangerous weapon. (PSR ¶27) On September 7, 1994, the defendant was indicted on three counts, namely, aggravated vehicular hijacking, possession of a stolen motor vehicle, and burglary in Cook County, Illinois Case No. 94-CR-22621. (PSR ¶27) The defendant was later charged in Count 4 with armed robbery; on January 17, 1995, he pleaded guilty to that offense and was sentenced to 6 years in IDOC. (PSR ¶27) The PSR has correctly determined that this conviction is a crime of violence, although the defendant objects.

According to the "Certified Statement of Conviction" provided by the Circuit Clerk of Cook County, Illinois, the defendant was convicted on January 17, 1995, of Count 4 of the indictment/information. (*See* Exhibit B, attached hereto) The certified conviction further lists Count 4 as charging armed robbery in violation of 720 ILCS 5/18-2(a). Although there are several alternative ways to violate Section 18-2(a), they each require that a person violates Section 18-1 while armed with a dangerous weapon or firearm. *See* 720 ILCS 5/18-2. In turn, Section 18-1 states that a "person commits robbery when he or she takes property . . . from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a). Thus, it is impossible to commit the Illinois offense of armed robbery without satisfying the ACCA's definition that any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or another" is a violent felony. 18 U.S.C. § 924(e)(2)(B)(i); *see People v. Hay,* 840 N.E.2d 735, 741 (Ill. App. 2d Dist. 2005) ("The gravamen of the offense of robbery is the use of force or threat of the imminent use of force; the use of force or threat of the use of force is the element that differentiates robbery from theft.").

Moreover, nothing about *Mathis* changes this analysis. *Cf. Duncan*, 2016 WL 4254936, at *5 (finding after *Mathis* that Indiana's much broader robbery statute was still a violent felony under the use of force clause of the ACCA). Thus, the defendant's objection should be overruled, and the defendant's armed robbery conviction should qualify as a violent felony under the ACCA.

III. **The Defendant's Illinois Aggravated Battery with a Firearm Conviction Qualifies as a Violent Felony under the Armed Career Criminal Act.**

In the defendant's third qualifying conviction under the ACCA, he was charged with aggravated battery with a firearm after he shot another individual about the body in Cook County, Illinois Case No. 08-CR-2211301. (PSR ¶35) He was convicted of aggravated battery with a firearm "in that he, in committing a battery, knowingly caused injury to [E.B.] by means of the discharging of a firearm, to wit: shot [E.B.] about the body in violation of Chapter 720 Act 5 Section 12-4.2 of the Illinois Compiled Statutes 1992 . . ." (*See* Exhibit C, attached hereto). Section 12-4.2, in turn, states that a person commits aggravated battery with a firearm when he, "in committing a battery, knowingly or intentionally by means of the discharging of a firearm (1) causes any injury to another person . . ." 720 ILCS 5/12-4.2. Thus, the defendant's conviction for aggravated battery with a firearm is a violent felony because it "has as an element the use, attempted use, or threatened use of physical force against the person or another." 18 U.S.C. § 924(e)(2)(B)(i). Moreover, the PSR lists this conviction as a violent felony, and the defendant does not object.

IV. **Under the Plea Agreement, Because the Defendant Is an ACC, the United States Exercises Its Option to Declare the Plea Agreement Null and Void.**

Courts generally use contract law principles to interpret plea agreements based on the parties' reasonable expectations. *See United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). Here, under the explicit terms of the plea agreement, the parties agreed that either party could declare the plea agreement null and void if the United States discovered prior to sentencing that the defendant was an ACC. Based on the foregoing,

the United States asserts that the defendant is an ACC and hereby exercises its option to declare the plea agreement null and void. *Id.* at 730-31 ("the government appropriately exercised its option to rescind the deal [and] treated the entire plea agreement as void, including the provisions that would have benefitted it").

Of course, even though the plea agreement is null and void, at this point, the defendant has pleaded guilty and the Court has accepted the guilty plea. Therefore, the Court should advise the defendant of his right to withdraw the guilty plea. *United States v. Adame-Hernandez*, 763 F.3d 818, 826 (7th Cir. 2014) ("It becomes the defendant's choice whether to stand by his plea or withdraw it."). Of course, the defendant may choose to maintain his plea of guilty and proceed to sentencing on November 14, 2016. In the event that he chooses to withdraw his guilty plea, however, the United States informs the Court that it expects the trial of this matter to last approximately one day.

WHEREFORE, the United States of America respectfully requests that this Court find that the defendant has three prior qualifying violent felony convictions under the Armed Career Criminal Act, permit the United States to exercise its option to declare the plea agreement null and void, and provide the defendant with the opportunity to withdraw his plea of guilty.

Respectfully submitted,

JAMES A. LEWIS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217-373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

<div style="margin-left:40%">

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

</div>